## Melody v. Bornot, Inc., et al.

*Conlen, La Brum & Beechwood,* for claimants.

*Wayland H. Elsbree* and *Algernon R. Clapp,* of *White, Schnader, Maris & Clapp,* for defendants.

GORDON, JR., J., April 13, 1933.—This is an appeal by the defendants from a decision of the Workmen's Compensation Board affirming an order of the referee in this case modifying a compensation agreement dated October 1, 1928, by declaring the same to be in full force and effect as of that date, and directing the defendants to pay compensation to the claimant for total disability and to continue such payments until an alleged total disability of the claimant shall "change in effect."

The question presented for our consideration is whether this action of the referee and compensation board is a lawful exercise of their powers and jurisdiction in view of earlier decisions of the board in the case, one of which was affirmed by the Court of Common Pleas No. 1 on appeal. In order to determine this question, the history of the proceedings will have to be reviewed, and, in doing so, the appellant employer and insurance carrier will be referred to

indiscriminately as the defendant or employer, since their rights and duties in the matter are identical. On February 7, 1928, the claimant suffered an injury during the course of her employment by the tilting of a chair on which she attempted to sit and which precipitated her to the floor. On March 2nd of the same year, the claimant entered into a compensation agreement with the defendant, which was approved by the board. Compensation was paid under this agreement until October 22, 1928, on which date the defendant filed a petition for termination of the agreement on the grounds that the claimant's disability had ended and that she refused to sign a final receipt. To this petition the claimant filed an answer, averring that her disability had not ended and that she was unable to return to work. Testimony was taken by the referee to whom the petition was referred, in which two physicians testified for the defendant to the effect that the claimant had completely recovered from her injury, the claimant was heard in person and by one physician who testified to the contrary, and the referee also considered either the testimony of, or a statement by, another physician who had examined the claimant at the request of the referee, and who concurred in the opinion expressed by the defendant's physicians that the disability had ceased. Neither the notes of testimony taken before the referee nor his decision appear in the record, but the docket entries show that on March 14, 1929, the referee granted the employer's petition for termination of the agreement on this ground and that no appeal was taken to the compensation board from that decision. On June 25, 1929, the claimant filed a petition for modification of the agreement, in which she averred that she was still undergoing treatment for her injuries; that she was able to work only to the extent of earning $2.50 per week, and that otherwise she continued to suffer total disability from the accident. To this petition the defendant filed an answer, denying that the claimant had any remaining disability from the accident which required medical treatment or prevented her from returning to her regular work. The issue thus raised was referred to Referee Mattmann, who heard the testimony of the claimant and two physicians on the one side, and of one physician on the other. At this hearing the claimant contended that, in addition to suffering an injury to the coccyx in the accident, she also suffered a fracture of the transverse process of the fifth lumbar vertebra on the left side. The referee decided this issue on March 14, 1930, in an opinion in which he found as a fact "that at the time of the accident which is the subject of the agreement in this case, the only injury which the claimant sustained was to the coccyx, and any disability that she suffered from as a result of that accident was confined to that particular area. Further, that the disability of which the claimant now complains is located in the upper and middle part of the back, and, from the medical testimony, particularly that of Dr. Weisenburg, this condition is not now, and never was, associated or related in any way to the accident." The referee accordingly dismissed the petition for modification of the compensation agreement.

On March 26, 1930, the claimant appealed from this decision by the referee to the Workmen's Compensation Board, which, on August 11, 1930, affirmed the referee and dismissed the appeal in an opinion, in which it held as follows:

"The referee's findings are supported by the testimony of Dr. T. H. Weisenburg. It appears that the injury was confined to the coccyx and the surrounding area. Now, however, the claimant complains of pain in the upper and middle part of the back. She has changed entirely the seat of her complaint, and has not succeeded in showing that the things of which she now complains resulted from the injury. This being the case, we are unable to find that the accident caused the claimant's present disability."

18

From this decision of the compensation board the complainant appealed to the Court of Common Pleas No. 1, as of June Term, 1930, No. 15549, and, on March 6, 1931, that court affirmed the decision of the board. The claimant then appealed to the Superior Court from the decision of the court of common pleas, but later discontinued the appeal, and, on September 1, 1931, the record was remitted to the Workmen's Compensation Board from the common pleas.

While the claimant's appeal just referred to was pending before Court of Common Pleas No. 1, the claimant filed another petition with the Workmen's Compensation Board for a hearing de novo. So far as the allegations of the petition for this hearing are relevant to the issue now before us, the claimant averred, and the answer of the defendant specifically and categorically denied, first, that Referee Lutz, who had heard the original petition to terminate the compensation agreement, had, of his own motion, called a Dr. Gill without the consent of the claimant; second, that Dr. Gill "was and now is an examining physician for the defendant's insurance carrier;" third, that the doctor's testimony was received by the referee as evidence without the right of claimant to cross-examine him; fourth, that "Dr. Gill was not a disinterested witness," and, fifth, that at the time of the hearing before Referee Lutz the complainant was still suffering from disability and unable to resume her employment.

On October 3, 1930, the board refused the petition for a hearing de novo. On August 5, 1931, after the remission of the record from Court of Common Pleas No. 1, above referred to, the claimant filed still another petition, to reinstate and reconsider the petition for a hearing de novo which, as just stated, had been refused by the board on October 3, 1930. In this petition the claimant contended that since the accident "she has continuously suffered from pains throughout her back, especially in the lumbar and sacro-iliac regions and in the region of the coccyx;" that Dr. Weisenburg, "on whose testimony the decision of the referee is based, was mistaken as to the present physical and mental condition of the claimant and the cause or causes thereof, that at least four reputable doctors do not agree with Dr. Weisenburg's opinion;" and that "her present complaints were caused by the accident aforesaid." An answer having been filed to this petition, it was refused by the board on September 28, 1931.

Although the docket entries fail to disclose it, the record contains two other petitions filed by the claimant on the same date on which she filed her petition to reinstate and reconsider the petition for hearing de novo. These two petitions were, first, "for termination or modification of agreement or award on ground of changed disability;" and, second, "for reinstatement of compensation agreement or award." Apparently the Workmen's Compensation Board had not acted upon these petitions when it rendered its decision on September 28, 1931, for, on January 11, 1932, a new board having come into office, its chairman handed down a lengthy opinion upon the two open petitions, in which he reviewed the proceedings to date, and said, inter alia: "It is clear to us that nothing is to be gained by filing petitions for modification or reinstatement, for the reason that modification and reinstatement is now res adjudicata under such facts as have been established in the case, and for the further reason that, assuming these facts to be true, there is nothing to modify and nothing to reinstate. The fatal defect in this cause is the compensation agreement itself, for we find not only a patent ambiguity in this agreement, but an apparent neglect on the part of the referee who first heard the case to find the substantive facts necessary to support a petition based upon a change of disability, and the failure of the second referee to admit such competent evidence as would fairly establish them. Not only are the parties at fault, but there has been a clear neglect of duty on the part of those charged with the administration of the

Workmen's Compensation Law. We are unwilling to say under such circumstances that the claimant is to be deprived of an opportunity of establishing a right to compensation, and, if necessary, we would set aside and disregard every statute of limitation that appears in The Workmen's Compensation Act (Horn v. Lehigh Valley R. R. Co., 274 Pa. 42), for the reason that we are compelled to find an unintentional neglect of duty on the part of the referee who first adjudicated the case by reason of his failure to correct, by his findings or any findings, the agreement executed by the parties. Such an agreement and such a failure amount to a patent and attempted fraud." The two open petitions were then dismissed, and the board granted leave to the claimant to file a petition to review the compensation agreement.

It may be noted at this point that the time allowed by The Workmen's Compensation Act and its supplements and amendments for reviewing decisions of the board had elapsed, and that the only action, if any, available to the claimant was a review of the compensation agreement on the ground of fraud, accident or mistake, which the act allows at any time, without limitation. Therefore, on January 14, 1932, the claimant filed a petition to review the agreement, alleging as the ground therefor that the agreement "was based upon and procured by accident, mistake or fraud, both in law and fact, to wit, it fails to state the true facts, nature and/or extent of any injuries sustained as a result of the accident . . . and the referee, after a hearing held and testimony taken on January 2, 1929, failed to find the facts and failed to correct the agreement, and the referee, after the hearing held and testimony taken on February 13, 1930, excluding certain testimony because of certain mistakes and entered findings of facts predicated upon facts as true which were untrue." The answer of the employer's insurance carrier to this petition averred, after reviewing the history of the case, that "all facts relative to the nature and extent of the claimant's injuries as a result of the said accident on February 7, 1928, have been finally adjudicated," and that, "your honorable board is without jurisdiction to review said compensation agreement."

At the hearing before Referee Eaches, specially assigned by the board, the claimant, in addition to testifying herself, called Dr. Robert Shoemaker, who had testified on her behalf at the hearing of earlier petitions, and two other doctors. The defendants presented no testimony, and objected to the taking of any testimony on the ground that all questions of fact relative to the nature and extent of the disability sustained by the claimant as a result of the accident had been already determined adversely to the claimant, and were res adjudicata. With the record in this condition, the referee rendered his decision on March 11, 1932, in which he held in effect that the coccygeal injury, which the board had previously found was cured, continued; that the fracture or injury to the fifth lumbar vertebra, which the board had also found was not caused by the accident, was so caused; that the compensation agreement was founded upon a mistake of fact; that the decision of the board terminating the agreement of October 1, 1928, on the basis of its adjudication of the disputed facts respecting the claimant's injuries, and subsequently affirmed by Court of Common Pleas No. 1, was rendered under a mistake of fact, and that the claimant was still totally disabled as a result of the accident. Upon this finding the referee set aside the board's original action in terminating the compensation agreement, amended the agreement, declared it to be in full force and effect, ordered the defendant employer and insurance carrier to resume payment of compensation for total disability as of October 1, 1928, and directed that the amount of compensation due should bear interest at the rate of six per cent. The defendant then appealed to the board, which affirmed the referee's decision

and held that, under section 413 of The Workmen's Compensation Act, as amended by the Act of April 13, 1927, P. L. 186, which authorizes the board to review a compensation agreement at any time for fraud, accident or mistake, it had jurisdiction of the petition, and it accordingly dismissed the appeal. The defendants then took the appeal, which is now before us, from this decision of the board.

It is evident from the foregoing chronological review of this proceeding that the decision of the Workmen's Compensation Board must be reversed. The issues of fact between the parties, namely, whether the plaintiff suffered in the accident an injury to her back in addition to the conceded coccygeal injury, and whether such injuries as she so suffered continue to the present time, have been finally and definitely adjudicated adversely to the claimant's contention, after numerous hearings and by repeated decisions of the Workmen's Compensation Board, at least one of which has been affirmed by Court of Common Pleas No. 1 on appeal. The limitation of time prescribed by the statute for a review or correction of these decisions has long since passed, and the issues settled by them are not open to further controversy. The Workmen's Compensation Board has endeavored to open and readjudicate this closed dispute by asserting that there was fraud or mistake in the previous decisions of the referees and board, and by proceeding to reinstate and modify the compensation agreement upon this ground. It is true that the statute which gives the board the right to correct a compensation agreement for fraud, accident or mistake places no limit upon the time in which this may be done. Obviously, however, the fraud, accident or mistake which the statute contemplates must be between the parties in relation to procuring or entering into the agreement itself, and not to decisions of the board which have ripened into adjudications of facts in controversy. Indeed, the very adjudication affirmed by the court of common pleas in this case—that the claimant suffered an injury to the coccyx only and not to the back, and that she had completely recovered from the former injury—entirely negatives any claim of fraud, accident or mistake in connection with the compensation agreement itself, and conclusively establishes that the agreement was not so tainted. The record shows that again and again the claimant was given full opportunity, in the earlier phases of this case, to prove her contention as to the nature and extent of her injuries. There was ample evidence to support the decision of the board and of the common pleas, and their conclusion is final upon the subject. The evidence furnishes no justification whatsoever for the reckless assertions contained in the opinion of the board, that this claimant was not given an opportunity fully to present her case, and that the previous decisions of the board were fraudulent, either constructively or in fact, and worked an injustice to her. It is always unfortunate when one charged with a quasi-judicial duty displays in its performance a studied hostility to the law such as that shown in the board's decision in this case. The official who, as was done here, openly declares that he would set aside and ignore the clear mandate of the law in order to bring about his own conception of what the law should be begets a want of confidence in his administration of justice, for he immediately raises a grave question as to the fairness and impartiality of his decisions, whether they be of law or of fact. Equity follows the law, and supposedly equitable considerations should not be permitted to pervert or obstruct its operation. As was said by Blackstone, in his introduction to the Commentaries (*p. 62), with respect to the function of equity in correcting that wherein the law is deficient by reason of its universality: "The liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law, and leave the decision of every question entirely in the breast of the

judge. And law, without equity, though hard and disagreeable, is much more desirable for the public good than equity without law; which would make every judge a legislator, and introduce most infinite confusion; as there would then be almost as many different rules of action laid down in our courts, as there are differences of capacity and sentiment in the human mind." The rights of parties litigant, when once finally established, are not to be denied them by an arbitrary and arrogant refusal to apply the well-settled law to the subject. The claimant in this case has had her day in court, and her contentions as to her injuries have been decided against her. The time for review or correction of any supposed error in that decision is past, and all the lawful rights which flow from it must be accorded to the defendants as fully as the claimant would expect them to be accorded to her had the adjudication of the dispute been in her favor.

For these reasons, the exceptions of the defendants are sustained, the decision of the Workmen's Compensation Board is reversed, and the record is remitted to the compensation board with instructions to dismiss the petition.